956 F.2d 96
 Richard STOWELL and Joy Stowell, Plaintiffs-Appellants,
v.
MACANDREWS & FORBES d/b/a First Gibraltar Bank FSB, Federal
Deposit Insurance Corporation and Federal Savings
and Loan Insurance Corporation
Resolution Fund, Defendants-Appellees.
 No. 91-2721
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 March 16, 1992.
Rehearing Denied April 14, 1992.
 
 Marian S. Rosen, Rosen Newey & Von Blon, Houston, Tex., for Stowell.
 Walter G. Pettey, III, Stephen G. Gleboff, Pettey & Martin, Dallas, Tex., for FSLIC & FDIC.
 Appeal from the United States District Court for the Southern District of Texas.
 Before POLITZ, Chief Judge, THORNBERRY, and DAVIS, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 The appellants, Richard and Joy Stowell, appeal from the district court's grant of summary judgment in favor of the appellees, the Federal Deposit Insurance Corporation ("FDIC") both in its corporate capacity and as manager of the FSLIC Resolution Fund. The Stowells sued the FDIC in these two capacities to enjoin the disposition of certain stock in which the Stowells claim an ownership interest. The district court concluded that the appellees were entitled to judgment as a matter of law because the Stowells did not have an ownership interest in the stock or its proceeds.
 
 I. Background
 
 2
 Richard Stowell was an Executive Vice President of Gibraltar Savings Association and a related savings association ("Associations") until he resigned in 1988. At the time of his resignation, Stowell and the Associations negotiated a Business Separation Agreement detailing the severance benefits that Stowell was to receive. One such benefit was the right to receive a .5% interest in the proceeds of a stock warrant owned by Gibraltar Savings.
 
 
 3
 Seven weeks after Stowell and the Associations executed the Business Separation Agreement, the Federal Home Loan Bank Board ("Bank Board") declared the Associations insolvent. The Bank Board closed the Associations and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as Receiver. The Bank Board found that the proceeds resulting from a liquidation of the Associations' assets would be insufficient to satisfy the Associations' secured debts, much less the general or unsecured debts. Consequently, all unsecured creditors' claims were worthless. (R. at 5).
 
 
 4
 To avoid the complete loss of the institutions, the Bank Board authorized a triangular transaction between the receivership estates of the Associations, which were managed by the FSLIC in its capacity as receiver ("FSLIC/Receiver"); the FSLIC in its corporate capacity ("FSLIC/Corporate"); and First Gibraltar Bank. (R. at 7). The effect of the triangular transaction was that the
 
 
 5
 FSLIC, as Receiver for each association, entered into an "Aquisition Agreement" with First Gibraltar Bank under which First Gibraltar Bank purchased from the Receiver substantially all of the assets of the associations and agreed to assume each association's secured and deposit liabilities and certain tax liabilities.
 
 
 6
 While assets of the [Associations] were conveyed to First Gibraltar [Bank] and to FSLIC/Corporate under this transaction, neither entity assumed the general, unsecured liabilities or the contract obligations of the closed [Associations]. Such liabilities and obligations remained with [FSLIC/Receiver].
 
 
 7
 (R. at 7). As part of the triangular transaction, the stock warrant was transferred from the insolvent Association to FSLIC/Corporate. When FSLIC/Corporate was abolished by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, FSLIC/Corporate's assets were transferred to the FSLIC Resolution Fund which is managed by FDIC/Corporate. Thus, FDIC/Corporate, in its capacity as manager of the FSLIC Resolution Fund, held the warrant until it was exercised to purchase common stock, and now holds the stock.
 
 
 8
 The Stowells brought suit in state court against (1) the FDIC in its corporate capacity ("FDIC/Corporate"), (2) the FDIC as manager of the FSLIC Resolution Fund ("FDIC/Manager"), and (3) First Gibraltar Bank. The Stowells sought recovery of .5% of the stock purchased with the warrant. The FDIC removed the suit to federal court. Only FDIC/Corporate and FDIC/Manager remain in the suit since the Stowells eventually dismissed First Gibraltar Bank pursuant to an Agreed Order To Dismiss. (R. at 131). FDIC/Corporate and FDIC/Manager submitted an alternative motion to dismiss and motion for summary judgment, contending that (1) the Business Separation Agreement gave Stowell only a contract right to payment and not a property right in the warrant or its proceeds, and (2) FDIC/Corporate and FDIC/Manager are not responsible for any of the closed Associations' contractual liabilities. The district court granted the motion for summary judgment, holding that the Business Separation Agreement gave Stowell a contractual right to a percentage of the net proceeds enforceable against FDIC/Receiver, but not against FDIC/Corporate or FDIC/Manager. We affirm the district court's grant of summary judgment.
 
 II. Analysis
 
 9
 Summary judgment is proper if the summary judgment evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Based on its interpretation of the Business Separation Agreement, the district court held that FDIC/Corporate and FDIC/Manager were entitled to judgment as a matter of law. The district court's conclusion that the Agreement created a promise to pay and not a transfer of a property interest, mandated that the Stowells could not state a claim against FDIC/Corporate or FDIC/Manager. If the district court's interpretation of the Business Separation Agreement is correct, then appellees were entitled to judgment as a matter of law, since a suit based on a contract claim could only be brought against the FDIC/Receiver. See Trigo v. Federal Deposit Insurance Corp., 847 F.2d 1499 (11th Cir.1988) (Plaintiffs could only bring contract claim against FDIC in its capacity as Receiver of insolvent bank because all contractual obligations remained with FDIC/Receiver). Since an appellate court reviewing a grant or denial of summary judgment makes the same inquiry as the trial court, we interpret the Business Separation Agreement de novo to determine whether the appellants are entitled to judgment as a matter of law. See Ayo v. Johns-Manville Sales Corp., 771 F.2d 902, 904 (5th Cir.1985).
 
 
 10
 We find that the Business Separation Agreement is unambiguous and did not transfer an ownership interest in the net proceeds to the Stowells at the time it was executed. The portion of the Business Separation Agreement relating to the warrant provides that:
 
 
 11
 (f) Warrant. The Associations hereby covenant and agree to and hereby do assign, transfer and convey to Stowell the right to receive the amount equal to one-half of one percent (.5%) of the Net Proceeds (as hereinafter defined) realized on the Warrant to purchase 1,296,524 shares of Common Stock.... The parties agree and acknowledge that Stowell's right to receive Net Proceeds is not an assignment or disposition of the Warrant but merely the Association's agreement to pay a share of the net gains realized on the disposition or transfer of the Warrant or the Geneva common stock purchased pursuant to the Warrant.
 
 
 12
 The plain meaning of the Agreement illustrates that it constitutes a promise to pay from a certain fund and not an assignment of an ownership interest. It is possible to make a present transfer of a future interest but such a transfer must be "distinguished from a contract to assign in the future or to pay out of a fund to be collected." 3 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 413 (3rd ed. 1960). The crucial distinction between a promise to pay out of a particular fund and a present transfer of ownership is "the intention of the assignor to give and the assignee to receive present ownership of the claim." Id. § 428. The Business Separation Agreement is a contract to pay out of a fund to be collected. For example,
 
 
 13
 a promise to an attorney that he shall have as his compensation a certain share or payment out of a fund in litigation creates a valid partial assignment if the attorney is to collect the claim and pay himself by retaining his fee, whereas, if the fund is to come into the hands of the client, and he is to make the payment, there is only a contract right.
 
 
 14
 Id. According to the terms of the Business Separation Agreement, the warrant and any resulting stock or money proceeds were to remain in the Association's possession and the Association was to pay Stowell .5% of the net proceeds. Thus, the Business Separation Agreement grants Stowell only a contract right. Furthermore, in order to effectuate a valid transfer of an interest in a particular fund, "the transfer must be such as to leave the assignor with no control over the fund." In re Ashford, 73 B.R. 37, 40 (Bankr.N.D.Tex.1987). The Business Separation Agreement states that "Stowell agrees and acknowledges that the Associations shall have sole and exclusive control over the exercise, sale or disposition of the Warrant or any Geneva common stock purchased pursuant to the Warrant...." Clearly, the Agreement left the Associations with complete control over the warrant and thus did not constitute an assignment.
 
 
 15
 Although the plain meaning of the Agreement demonstrates that it is not an assignment of an ownership interest, we go on to address the Stowells' argument that the words "assign, transfer and convey" in the Agreement constitute a conveyance of a .5% interest in the net proceeds of the warrant. The Stowells concede that they do not have an interest in the warrant itself as the Agreement expressly states that "Stowell's right to receive Net Proceeds is not an assignment or disposition or transfer of the Warrant"; yet, they argue that an interest in the net proceeds was conveyed separately from an interest in the warrant itself. They argue further that the defunct Associations could have transferred to FDIC/Corporate only the 95.5% ownership interest in the proceeds which it had not transferred to them. In brief, the viability of the Stowells' claim against FDIC/Corporate and FDIC/Manager depends upon their ability to show that the Agreement transferred an ownership interest in the proceeds without transferring an interest in the warrant itself.
 
 
 16
 The Stowells rely heavily on two Texas cases, Frazier v. Hanlon Gasoline Co., 29 S.W.2d 461 (Tex.Civ.App.--Eastland 1930, writ ref'd) and Christopher v. Davis, 284 S.W. 253 (Tex.Civ.App.--Dallas 1926, writ ref'd), as support for their argument that the Business Separation Agreement transferred to them a property interest in the net proceeds of the warrant. Neither of these cases support the Stowells' contention. First, Frazier v. Hanlon Gasoline Co. involves the assignment of a partial interest in the profits from the sale of water from a lake. The Frazier court held that the agreement at issue conveyed a property right because an interest in profits from land "... is considered an interest or an estate in the land itself...." Frazier, 29 S.W.2d at 467. Thus, although the Frazier court held that a property interest had been transferred, the agreement constituted a transfer of a property interest rather than a contract right because the interest in the profits was actually an interest in the land itself, or a property interest. In contrast, the Stowells claim a partial ownership interest in the net proceeds of the warrant but concede that they do not own an interest in the warrant itself. Hence, Frazier v. Hanlon Gasoline Co. does not support the Stowells' argument.
 
 
 17
 Second, the Stowells cite Christopher v. Davis for the proposition that partial interests in the net rentals from a lease can be assigned separately from the lease. The relevant issue in Christopher v. Davis, was whether an assignment of rental profits that had not yet been generated was void for uncertainty. The court followed the now well-established rule that it is possible to assign contingent interests; yet, the court stated that the assignments "took effect as present contracts, enforceable when the assigned expectancies or possibilities happened." Christopher v. Davis, 284 S.W. at 257. The Stowells fail to recognize the import of this statement. Christopher v. Davis stands for the proposition that interests in rental profits may be assigned independently of an assignment of the lease, but also holds that contracts such as the Business Separation Agreement convey present contract rights that are enforceable once the contingent interest materializes. Like the agreement in Christopher v. Davis, the Business Separation Agreement conveyed a present contract right enforceable only when the net proceeds came into existence. See City National Bank of Beaumont v. American Surety Co., 52 S.W.2d 259, 262 (Tex.Comm'n App.1932, judgm't adopted) (Instrument assigned a present right to a designated portion of the profits which attached to the funds constituting profits as soon as they were earned). The Stowells could not have asserted any ownership rights over the warrant before net proceeds were generated. They might have been able to assert an equitable ownership interest in the profits if the Associations had exercised the warrant. Yet, until net proceeds were generated, which never occurred while the Associations held the warrant, the Stowells held only a contractual right to payment.
 
 III. Conclusion
 
 18
 The Business Separation Agreement constituted the Associations' promise to pay from a fund to be collected, which must be distinguished from an assignment of an interest. The Agreement grants Stowell only a contractual right to payment which could have given rise to an equitable ownership interest, but such an equitable interest could attach only when the net proceeds were generated. Thus, the condition on which the Stowells' only possible ownership interest depended was never satisfied while the Associations held the warrant. The entire ownership interest in the warrant was transferred to FSLIC/Corporate when the Associations went into receivership, while the contractual promise to pay a portion of the net proceeds to the Stowells remained with the receivership estate and with FDIC/Receiver. The Stowells do not hold any interest in the warrant under which they could recover from FDIC/Corporate or FDIC/Manager. Therefore, we AFFIRM the district court's grant of summary judgment.