AMERICAN INTERNATIONAL SPE-
CIALTY LINES INSURANCE
COMPANY, Appellant,

v.

TRITON ENERGY LIMITED, Triton
Energy Corporation, and Triton
Indonesia, Inc., Appellees.

No. 05–00–01584–CV.

Court of Appeals of Texas,
Dallas.

June 29, 2001.

Thomas Clark Wright, Campbell, Harrison & Wright, L.L.P., Houston, for appellant.

James M. Bettis, Harrison, Bettis & Staff, Houston, Gray H. Miller, Fulbright & Jaworski, L.L.P., Houston, Ernest Martin, Jr., Daniel T. Mabery, Haynes & Boone, L.L.P., Dallas, for appellees.

Before Justices KINKEADE, WRIGHT, and FITZGERALD.

## OPINION

WRIGHT, Justice.

American International Specialty Lines Insurance Company ("AISLIC") brings this interlocutory appeal pursuant to section 51.014 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2001). In a single issue, AISLIC contends that the trial court abused its discretion by granting an anti-suit injunction against it. After reviewing the record, we disagree.

### Factual and Procedural Background

In the underlying litigation, AISLIC issued a commercial umbrella insurance policy to Triton Energy Corporation for the policy period from May 31, 1993 to May 31, 1994, with policy limits of $25 million. Plaintiffs/appellees Triton Energy Limited, Triton Energy Corporation, and Triton Indonesia, Inc. (collectively, "Triton") contend that this policy provides coverage for an $11,014,110 punitive damage award against them on a malicious prosecution claim in *David A. Hite et al. v. Triton Energy Corp. et al.*, No. CV 97–7146 R(XCT) in the United States District

Court for the Central District of California (the "Hite Litigation").

Prior to the verdict in the Hite Litigation, Triton filed this action against several of its insurance carriers to assert claims for coverage in connection with the Hite Litigation. After the Hite verdict, on November 9, 1999, Triton joined AISLIC in this litigation. On November 12, 1999, AISLIC filed a new proceeding in California against Triton (the "California Law-suit"), seeking a declaratory judgment that its policy did not cover the punitive damages awarded in the Hite Litigation. Both cases proceeded.

In the California Lawsuit, AISLIC refused Triton's request for an extension of time to file its answer and proceeded with the first of several attempts to obtain an accelerated summary judgment hearing on the coverage issue. Although California law prohibits the hearing of summary judgment motions until 60 days after the defendant has answered,[1] AISLIC asked the court for an accelerated summary judgment hearing before Triton made a general appearance in the California suit. The California court denied AISLIC's request because not all of the defendants had appeared or otherwise responded to AISLIC's complaint. After Triton filed its answer in May 2000, AISLIC again sought an accelerated summary judgment hearing. The California court denied that request as well, setting a hearing for September 6, 2000, to allow Triton time to conduct discovery in defense of AISLIC's motion.

In the meantime, Triton filed an application for anti-suit injunction in Texas, seeking to enjoin AISLIC from pursuing the California Lawsuit. A hearing was set for September 1, 2000. In the California Lawsuit, AISLIC sought to reset its summary judgment motion to a date prior to September 1, 2000, arguing that the summary judgment motion should be heard prior to the Texas hearing on the anti-suit injunction "in order to avoid the risk of inconsistent judgments." This application was also denied by the California court.

After an evidentiary hearing, the trial court in Texas entered an anti-suit injunction prohibiting AISLIC from (1) "[f]iling or seeking the resolution of any dispositive motions or final disposition" in the California Lawsuit; and (2) conducting any discovery in the California Lawsuit. This appeal followed.

### Discussion

▇▇▇ We review the trial court's decision for abuse of discretion. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993); *Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex.1986).[2] A trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to guiding principles." *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997). In reviewing the trial court's order, we draw inferences from the evidence in the manner most

---

**1.** *See* Cal.Civ.Proc.Code § 437c (a) (Deering 1995) (motion for summary judgment "may be made at any time after 60 days have elapsed since the general appearance in the action or proceeding of each party against whom the motion is directed").

**2.** In doing so, we reject AISLIC's argument that the trial court's order "should be reviewed under a *de novo* standard." The Texas Supreme Court has applied the abuse of discretion standard in reviewing anti-suit in-

junctions. *See Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 161 (Tex.1986); *Gannon,* 706 S.W.2d at 305. Although it is clear from *Golden Rule Insurance Co. v. Harper,* 925 S.W.2d 649 (Tex.1996), that the trial court must specifically apply the four factors first articulated in *Gannon* in deciding whether to issue an anti-suit injunction, *Golden Rule* does not require, or even mention, *de novo* review.

favorable to the trial court's ruling. *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890–91 (Tex.App.—Houston [14th Dist.] 2000, pet. dism'd w.o.j.).

The Texas Supreme Court has held that an anti-suit injunction is appropriate in four instances: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex.1996) (citing *Gannon*, 706 S.W.2d at 307). There is "no question" that Texas courts "are empowered to issue injunctions to prevent parties from going forward with litigation in a sister state." *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex.1986). The principle of comity, however, requires that courts exercise the power to enjoin foreign suits " 'sparingly, and only in very special circumstances'." *Golden Rule*, 925 S.W.2d at 651 (citing *Christensen*, 719 S.W.2d at 163, and *Gannon*, 706 S.W.2d at 306). The party seeking an anti-suit injunction must show that "a clear equity demands" the injunction. *Golden Rule*, 925 S.W.2d at 651.

Triton does not contend that the "multiplicity of suits" factor is implicated in this case.[3] The trial court found, however, that all three of the remaining factors existed through AISLIC's pursuit of the California Lawsuit. The court specifically found that there was a threat to the court's jurisdiction, an important public policy was evaded, and the California Lawsuit was vexatious and harassing.

In finding that three of the four *Golden Rule* factors were met, the trial court relied on the language of the AISLIC insurance policy. The court found that AISLIC was prevented from pursuing the California Lawsuit by the "Service of Suit" endorsement to the policy. This endorsement provides as follows:

> In consideration of the premium charged, it is hereby understood and agreed that in the event of failure of [AISLIC] (herein called "the company"), to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that ... in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

AISLIC interprets this provision to mean only that AISLIC will not contest jurisdiction in a suit brought against it by Triton. Under AISLIC's interpretation, AISLIC is free to assert its own claims in other courts as well, whether or not suit has already been instituted by the insured. In contrast, Triton argues that AISLIC's additional promise to "abide by the final decision of such court" precludes AISLIC from asserting its claims in a separate proceeding when Triton has already initiated an action to recover amounts claimed to be due under the insurance policy. The trial court agreed with Triton's interpretation, reasoning that the promise to "abide

---

**3.** The trial judge noted that under the existing case law, one parallel proceeding would not constitute a "multiplicity" in any event. *See Golden Rule*, 925 S.W.2d at 651.

by the final decision of such court" would be "meaningless" if it did not require AISLIC to litigate its claims in the suit first brought by Triton. In its written order, the trial court found: "The Court is of the opinion that this endorsement required AISLIC to submit to the jurisdiction of the Court selected by Triton, which filed suit first, and to agree to be bound by that Court's final decision."

AISLIC relies on *International Insurance Co. v. McDermott, Inc.,* 956 F.2d 93 (5th Cir.1992), for the proposition that the service of suit clause does not "prevent the insurer from bringing its own action in another court." It is undisputed that, in the service of suit clause, AISLIC specifically reserved the right to commence its own action or remove an action filed by the insured. The *McDermott* court held that the insurer could bring its own action, even in the absence of the specific language AISLIC relies on here. 956 F.2d at 95–96. Two critical distinctions, however, prevent *McDermott* from persuading us here. First, the service of suit provision in *McDermott* lacked a clause in which the insurer agreed "to abide by the final decision of such court." The trial court found that this clause would be rendered meaningless if the service of suit provision was interpreted as AISLIC contends it should be. Second, the carrier in *McDermott* filed suit first. The actual holding of *McDermott* was that the insured could not "block" the insurer's suit "by a *subsequent* filing." *Id.* at 95 (emphasis added).

■ The parties have not cited any Texas cases interpreting a "service of suit" clause that includes the "abide by the final decision" language at issue here, and we have found none. AISLIC has cited *Columbia Casualty Co. v. Bristol–Myers Squibb Co.,* 215 A.D.2d 91, 635 N.Y.S.2d 173 (N.Y.App.Div.1995), in which the clause at issue does contain the "abide by the final decision" language. The New York court held that a "service of suit" clause is not a mandatory forum selection clause, but is merely a permissive consent to the jurisdiction of the court. The court, however, did not mention the "abide by the final decision" language or attempt to give it meaning. Without binding authority on point, we cannot conclude that the trial court's decision to give effect to the "abide by the final decision" language in accordance with the well-established principle of giving meaning and effect to all provisions of an insurance policy was an abuse of discretion. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994) (all portions of an insurance policy must be read together so that each provision is given effect); *Liberty Mut. Ins. Co. v. Am. Employers Ins. Co.,* 556 S.W.2d 242, 245 (Tex.1977) (interpretation giving reasonable meaning to all provisions is preferable to one that leaves a portion of the policy useless or inexplicable, or creates surplusage).

■ Here, the trial judge found that the anti-suit injunction was necessary to prevent the evasion of important public policy. The terms of the insurance policy were that the insured could file suit in the jurisdiction of its choice, and the insurer agreed to abide by the final decision of that court. The trial judge specifically found that "Texas has a strong public policy of enforcing its insurance policies and requiring insurers to step up to the plate with respect to their insureds and properly pay.... We have very strong public policies about not letting insurance companies back off of their obligations."

AISLIC does not discuss the trial court's public policy rationale, but instead argues that the "most compelling public policy argument at stake is California's prohibition of insuring punitive damages resulting from wilful conduct." Whether

or not California law will be applied in the proceedings below has not yet been determined by the trial court and is not before us now. The trial court, applying conflict of laws principles, will determine the appropriate law to be applied. *See Owens–Illinois, Inc. v. Webb,* 809 S.W.2d 899, 901 (Tex.App.—Texarkana 1991, writ dism'd w.o.j.) (issue of unfairness of applying Texas law instead of Canadian law was not before the court in appeal of anti-suit injunction; trial court will apply conflict of laws rules to determine the appropriate law to be applied). The existence of a California policy prohibiting insurance coverage of punitive damages, however, does not preclude a finding that *Texas* public policy will be evaded if an anti-suit injunction is not granted.

■ The trial court also found the California Lawsuit to be a threat to its jurisdiction. Because AISLIC agreed in the service of suit clause that the insured could choose where to file suit, and further agreed to be bound by that court's decision, the trial judge determined that AISLIC could not now undercut the agreement by racing to judgment in another court.

■ AISLIC argues that there is no threat to jurisdiction because only principles of comity, not jurisdiction, are invoked here. AISLIC argues that because both courts can proceed to judgment, the trial court is not deprived of jurisdiction. The trial court's concern, however, was not that the California and Texas courts would not respect each other's adjudications, but that the parties would "cherry pick" favorable rulings from each court as the litigation progressed, hindering the ability of each to proceed to judgment in its own case. The trial court found that AISLIC had undercut its contractual promise by pursuing the California Lawsuit, and concluded that

having made that agreement and them having gotten here first, whether they should or shouldn't have, that's it. And you can't undercut that by running off to another forum. I think that this—the other case therefore becomes a threat to my jurisdiction. It wouldn't otherwise be, but it does become one.

The *Golden Rule* standard is not whether a court will be deprived of jurisdiction, but whether there is a "threat" to the court's jurisdiction. 925 S.W.2d at 651. The trial court found that a threat existed. A court "may protect its jurisdiction" by enjoining the parties to a suit subsequently filed in a sister state. *See Espada Garrido v. Iglesias de Espada,* 785 S.W.2d 888, 890 (Tex. App.—El Paso 1990, no writ). Thus, we cannot conclude that the trial court acted without reference to guiding principles in finding a threat to its jurisdiction.

■ Finally, the trial court determined that "there is certainly evidence to support a finding that the California case has been vexatious and harassing," specifically citing AISLIC's attempts to obtain an accelerated summary judgment hearing and its refusal to allow Triton additional time to answer the complaint. The trial court found that rather than submitting to the jurisdiction of the Texas court and abiding by its decision, as the insurance policy required, AISLIC filed suit in California and proceeded to race to judgment there.

AISLIC argues that under the *Golden Rule, Gannon,* and *Christensen* decisions, a single parallel suit cannot be vexatious and harassing as a matter of law. The *Christensen* court, citing *Gannon,* did state that "[a] single parallel proceeding in a foreign forum does not constitute a multiplicity nor does it, *in itself* create a clear equity justifying an anti-suit injunction." *Christensen,* 719 S.W.2d at 163 (emphasis added). This language was also quoted in *Golden Rule,* 925 S.W.2d at 651. As noted above, however, the "multiplicity" factor is

not at issue in this appeal. Moreover, the trial judge did not find that the existence of the California Lawsuit "in itself create[d] a clear equity justifying an anti-suit injunction." *Christensen,* 719 S.W.2d at 163. Instead, the judge made findings on three of the four *Golden Rule* factors, and found irreparable harm to Triton "in the face of the ... so-called service of suit clause, and the other factors that have been announced and discussed in this case." The holdings in *Golden Rule, Gannon,* and *Christensen* do not compel the conclusion that the trial judge abused her discretion in finding that the California Lawsuit, in light of all of the circumstances, is vexatious and harassing.

■ In conclusion, AISLIC correctly states that the mere existence of a parallel proceeding in another forum does not support the granting of an anti-suit injunction. *See Gannon,* 706 S.W.2d at 307–308. Something more is required than expense, inconvenience, and the risk of inconsistent rulings. *Total Minatome Corp. v. Santa Fe Minerals, Inc.,* 851 S.W.2d 336, 340–41 (Tex.App.—Dallas 1993, no writ). However, the trial court determined that such special circumstances did exist, finding that AISLIC had violated the provisions of the policy of insurance it issued to Triton by filing suit in California after Triton instituted suit in Texas. The trial judge framed her decision in reference to the principles for anti-suit injunctions set forth by the Texas Supreme Court in *Golden Rule Insurance Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996). Thus, we cannot conclude that the trial court abused its discretion in granting the anti-suit injunction against AISLIC. Accordingly, we overrule AISLIC's issue.

We affirm the trial court's judgment.