Steve ROUSE, Appellant

v.

**TEXAS CAPITAL BANK, N.A., Appellee.**

No. 05–11–0422–CV.

Court of Appeals of Texas, Dallas.

Nov. 30, 2011.

Michael Wynne, Wynne & Smith, Sherman, for Appellant.

James T. Phillips, Randall K. Price, Stephen L. Tatum, Cantey & Hanger, LLP, Fort Worth, Donald E. Godwin, Robert C. Wiegand, George R. Carlton, Jr., Shawn M. McCaskill, Godwin Ronquillo PC, Dallas, for Appellee.

Before Justices BRIDGES, MARTIN RICHTER, and MURPHY.

## OPINION

Opinion By Justice MARTIN RICHTER.

This interlocutory appeal arises from the entry of an anti-suit temporary injunction. In a single issue, Steve Rouse ("Rouse") contends the trial court erred in enjoining the lawsuit he filed in Oklahoma against Texas Capital Bank ("TCB") after TCB initiated this case against him in Texas. Concluding Rouse's arguments are without merit, we affirm the trial court's order.

### BACKGROUND

Rouse is a partner in Tri–County Autoplex, an Oklahoma general partnership. ("TCA"). In August 2007, TCB and TCA entered into a floor plan loan agreement ("Loan Agreement") under which TCB would provide loans to TCA for the purchase of inventory in connection with its operation of an automobile dealership. Rouse and the other TCA partners executed an unlimited guaranty (the "Guaranty") with the same effective date as the Loan Agreement.

The Guaranty states that its purpose is to induce TCB to offer the Loan Agreement to TCA. The Guaranty also includes a forum selection clause that provides Texas courts shall have jurisdiction over disputes arising under the Guaranty and directs that venue of any such dispute shall be in Dallas County. Specifically, the Guaranty states:

> Courts within the State of Texas shall have jurisdiction over any and all disputes arising under or pertaining to this Guaranty and venue for such disputes shall be in the county or judicial district where [TCB's] address for notice purposes is located.

In 2010, TCA defaulted on its obligations under the Loan Agreement, and

TCB gave notice of default and acceleration. On April 30, 2010, TCB filed suit in the court below, asserting breach of the Loan Agreement against TCA and breach of Guaranty against Rouse and the other guarantors. On May 11, 2010, Rouse filed suit In Oklahoma, asserting, *inter alia,* that TCB and others conspired to defraud him in connection with the Loan Agreement.

TCB filed a special appearance, motion to quash service, and motion to dismiss in the Oklahoma case, all of which were denied. In the interim, Rouse answered the lawsuit in the court below, and included counterclaims based on the same allegations he asserted in the Oklahoma suit. The counterclaims were subsequently abandoned in an amended answer.

TCB then filed an application to vacate, modify and/or certify interlocutory order for appeal in the Oklahoma case. Later, TCB filed a motion for judgment on the pleadings or stay of claims, asserting that the Oklahoma suit should be stayed or dismissed because of the pendency of the first-filed Texas case and because of the forum selection clause in the Guaranty. The Oklahoma court denied both the application to vacate and the motion for judgment on the pleadings. Consequently, TCB filed a petition for writ of prohibition and an emergency application for the Oklahoma Supreme Court to stay the Oklahoma suit pending resolution of the jurisdictional matters. The Oklahoma Supreme Court denied TCB's requested relief.

After the Oklahoma courts denied TCB's requested relief, TCB sought the issuance of an anti-suit injunction in the court below. The Texas court granted the injunction, and ordered that Rouse not take any further action against TCB, including prosecution of the Oklahoma suit, until the Texas court rendered judgment in the instant case. This appeal followed.

## ANALYSIS

### Forum Selection Clause.

■ In a single issue, Rouse asserts the trial court erred in granting TCB's application for an anti-suit injunction. Specifically, Rouse contends that the forum selection clause in the Guaranty does not encompass his Oklahoma tort claims and TCB did not meet its burden to establish it was entitled to an anti-suit injunction. We disagree.

Because the parties' dispute concerning the Oklahoma suit stems from the interpretation of the forum selection clause, we begin our inquiry here. Rouse asserts the tort claims he alleged against TCB in the Oklahoma suit are not encompassed by the forum selection clause because they do not involve the same operative facts and do not depend upon the existence of a contractual relationship between the parties. Rouse further contends that resolution of these tort claims does not require interpretation of the Guaranty. TCB responds that the plain language of the Guaranty, coupled with the fact that Rouse's Oklahoma claims constitute compulsory counterclaims in the Texas suit, supports the opposite conclusion.

■ In Texas, forum selection clauses are generally considered valid and enforceable, unless enforcement is shown to be unreasonable and unjust. *In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672, 675 (Tex. 2009) (per curiam) (orig. proceeding); *RSR Corporation v. Siegmund,* 309 S.W.3d 686, 700 (Tex.App.-Dallas 2010, no pet.). "Enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart Org., Inc. v. Ricoh Corp.,*

487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring). Thus, by entering into an agreement having a forum selection clause, "the parties effectively represented to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons." *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010).

■■■ In analyzing the clause, we turn to principles of contract interpretation. *See Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324–25 (Tex.App.-Austin 1999, pet. denied). Our primary objective in construing a written contract is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex.2005). Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005). If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous and is construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Further, the Texas Supreme Court has advised that, in determining whether claims fall within the scope of a forum selection clause, the reviewing court should engage in a "common sense examination of the claims and the forum selection clause to determine if the clause covers the claims." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex.2010), citing *Int'l Profit*, 274 S.W.3d at 677.

In the instant case, the forum selection clause applies to "any and all disputes arising under or pertaining to" the Guaranty. Forum selection clauses with similarly broad language have been interpreted to include all claims that have some possible relationship with the agreement at issue. *See e.g., My Café–CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.-Dallas 2003, no pet.) (discussing forum selection clause language "relating to"). In the Oklahoma suit, Rouse sued TCB and others jointly and severally for fraud, conversion, unjust enrichment, civil conspiracy, and tortious interference for alleged actions in connection with the Loan Agreement between TCB and TCA. Rouse acknowledges that TCB required his execution of the Guaranty in connection with the Loan Agreement and claims he had a "special relationship" with TCB. According to the petition, as a result of the alleged special relationship between Rouse and TCB, TCB owed Rouse a legal and equitable duty to "cease funding under the floor plan when the dealership became out of trust." Rouse claims TCB "knew or should have known" that he would rely on TCB not to advance funds. Rouse further contends that TCB was aware of fraudulent conduct, including fraudulent financial statements, and profited by receiving interest payments under the Loan Agreement, and that he reasonably relied on TCB to act in good faith when he executed the Guaranty.

■■■ A common sense examination of the forum selection clause and the claims asserted in the Oklahoma case leaves no question that the Oklahoma claims against TCB arise under or pertain to the Guaranty. All of the alleged wrongs, as well as the alleged "special relationship" alleged in the Oklahoma petition relate to the Loan Agreement and the Guaranty. The Guaranty expressly states that it was given by Rouse to induce TCB "to extend credit and other financial accommodations" to TCA. Thus, without the Guaranty, there would

have been no Loan Agreement. "Pleading alternative noncontractual theories of recovery will not alone avoid a forum selection clause if those alternative claims arise out of the contractual relations and implicate the contract's terms." *My Café–CCC,* 107 S.W.3d at 866, *citing Accelerated Christian Educ., Inc. v. Oracle Corp.,* 925 S.W.2d 66, 72–73 & n. 7 (Tex.App.-Dallas 1996). Because the Oklahoma tort claims against TCB arise out of or pertain to the contractual relations between Rouse and TCB, they are encompassed by the forum selection clause in the Guaranty.

### Anti–Suit Injunction.

■ Having concluded the forum selection clause applies to Rouse's Oklahoma claims against TCB, we now consider whether the trial court erred in enjoining the Oklahoma suit. We review the trial court's award of injunctive relief for abuse of discretion. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993); *Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex.1986). A trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to guiding principles." *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997).

■ When a party files suit in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a suit subsequently filed in another court of this state. *Gannon,* 706 S.W.2d at 304; *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986). Although courts of this state have the power to enjoin parties from filing or pursuing lawsuits in other states, the principle of comity requires that courts exercise this equitable power sparingly. *See Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996); *Christensen,* 719 S.W.2d at 163. Thus, a party seeking such an anti-suit injunction must establish "very special circumstances" and that a "clear equity demands" the injunction. *Golden Rule,* 925 S.W.2d at 651 (citing *Christensen,* 719 S.W.2d at 163); *Marketshare Telecom, L.L.C. v. Ericsson, Inc.,* 198 S.W.3d 908, 921 (Tex.App.-Dallas 2006, no pet.).

■ "There are no precise guidelines for judging the propriety of an anti-suit injunction; the circumstances of each situation must be carefully examined to determine whether the injunction is necessary to prevent an irreparable miscarriage of justice." *See AVCO Corp. v. Interstate Southwest, Ltd.,* 145 S.W.3d 257, 262 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (citing *Gannon,* 706 S.W.2d at 307). The Texas Supreme Court, however, has identified four situations in which anti-suit injunctions may be appropriate: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *See Golden Rule,* 925 S.W.2d at 651 (citing *Gannon,* 706 S.W.2d at 307). Each of these purposes reflects, directly or indirectly, the recognized need of a trial court to govern the litigation before it to the end that it may render final judgment disposing of all issues before the parties. *Ortiz v. Legal Concierge, Inc.,* 263 S.W.3d 385, 391 (Tex.App.-Dallas 2008, pet. denied).

■ Initially we note that the parallel nature of the Texas and Oklahoma suits does not, standing alone, justify the entry of an injunction. The Supreme Court of Texas has instructed that even a mirror image proceeding does not constitute a special circumstance requiring an anti-suit injunction. *Golden Rule,* 925 S.W.2d at 651. Rather, a parallel suit must be allowed to proceed "absent some other circumstances which render an injunction necessary 'to prevent an irreparable mis-

carriage of justice.' " *Id.* at 652 (quoting *Gannon,* 706 S.W.2d at 307); *see also AVCO,* 145 S.W.3d at 266 (stating multiplicity argument typically supports issuance of anti-suit injunction when party files numerous lawsuits to relitigate issues in different courts); *Forum Ins. Co. v. Bristol–Myers Squibb Co.,* 929 S.W.2d 114, 119 (Tex.App.-Beaumont 1996, writ denied) (finding multiplicity of suits). Something more than expense, inconvenience, and the risk of inconsistent rulings is required. *Total Minatome Corp. v. Santa Fe Minerals, Inc.,* 851 S.W.2d 336, 340–41 (Tex. App.-Dallas 1993, no writ).

■ In the instant case, however, the trial court determined such special circumstances did exist. Specifically, the trial court found that Rouse filed the Oklahoma suit on the same issues over which it has jurisdiction and did so to avoid litigating the issues in Texas. The trial court further found that Rouse attempted to circumvent the Texas trial setting to first reach a judgment in Oklahoma. The court concluded that Rouse's conduct was a threat to its jurisdiction and was vexatious and harassing.

■ This jurisdictional threat triggers cautious consideration of the principle of comity. Indeed, the restrictive approach to anti-suit injunctions typically results from the fact that courts place a premium on preserving comity. *See e.g., Travelers Ins. Co. v. McDermott,* No. 09-05-110-CV, 2006 WL 950101, at *5 (Tex. App.-Beaumont 2006, no pet.) (not designated for publication) (concluding comity superceded putative public policy interest in enjoining foreign suit); *see also Christensen,* 719 S.W.2d at 163. Comity has been described as "a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another." *New Process Steel Corp. v. Steel Corp. of Texas,* 638 S.W.2d

522, 524 (Tex.App.-Houston [1st Dist.] 1982, no writ); *Hawsey v. La. Dept. of Social Services,* 934 S.W.2d 723, 726 (Tex. App.-Houston [1st Dist.] 1996, writ denied). In accordance with the principle of comity, Texas will recognize the laws of other states and, in return, will expect those other states to afford the same treatment to Texas. *K.D.F. v. Rex,* 878 S.W.2d 589, 593–94 (Tex.1994). Comity is similar to, but distinguishable from full faith and credit. Comity involves a "courteous willingness," as opposed to a constitutional imperative, "among sister states to function adhesively and harmoniously when drawn into legal disputes of common source." *Forum Ins. Co.,* 929 S.W.2d at 117. The invocation of comity demands delicate balancing and scrutiny because "its invasive effect on a foreign sovereign may be viewed with small esteem." *Id.* at 114.

■ It is well-established that the courts of sister states are considered foreign to each other. However, when parallel suits are filed in sister states, it is custom, as a matter of comity, for the second court in which an action is filed to stay its proceeding until the first suit has been determined, or at least for a reasonable amount of time. *See Crown Leasing Corp. v. Sims,* 92 S.W.3d 924, 927 (Tex. App.-Texarkana 2002, no pet.). As this court aptly observed, "the doctrine [of comity] does not stand boldly in the armor of unyielding obedience but is rather arrayed in the vestments of persuasion." *Nowell v. Nowell,* 408 S.W.2d 550, 553 (Tex.Civ.App.-Dallas 1966, writ denied).

■ Against this backdrop we consider the Oklahoma courts' actions. There is no question that the underlying suit was filed first in Texas, and neither party disputes that the Texas court has jurisdiction over the Guaranty issues. These facts,

coupled with the unequivocal language of the Guaranty's forum selection clause compel the conclusion that Rouse is contractually obligated to litigate his tort claims in Texas. Yet the Oklahoma court refused to enforce the forum selection clause or stay the Oklahoma proceeding. The Texas trial court specifically found that despite TCB's requests, the Oklahoma trial court and the Oklahoma Supreme Court declined to stay or abate the claims against TCB in the Oklahoma suit. Because of this refusal to act, the trial court could reasonably conclude that Oklahoma was not a cooperative jurisdiction. *Cf. Travelers Ins. Co.*, 2006 WL 950101 at *5 (foreign jurisdiction that stayed proceeding pending conclusion of Texas action deemed cooperative jurisdiction); *see also London Market Insurers v. American Home Assur. Co.*, 95 S.W.3d 702, 707 (Tex.App.-Corpus Christi 2003, no pet.) (concluding Texas court's jurisdiction threatened by New York action involving coverage issues under same insurance policies). The trial court also found that in the absence of injunctive relief, TCB would be without an adequate remedy at law because it had exhausted its pre-appeal remedies in the Oklahoma courts. Comity notwithstanding, a court is entitled to protect its jurisdiction by enjoining the parties to a suit filed in a sister state. *See Espada Garrido v. Iglesias de Espada*, 785 S.W.2d 888, 890 (Tex.App.-El Paso 1990, no writ). Texas is entirely sovereign and unrestricted in its powers, whether legislative, judicial, or executive, and it does not acknowledge the right of any other states to hinder its own sovereign acts or proceedings. *See In re State Farm Mut. Ins. Co.*, 192 S.W.3d 897, 901 (Tex.App.-Tyler 2006, orig. proceeding). In view of the Oklahoma courts' apparent reluctance to extend courteous cooperation or function harmoniously with the Texas court, we cannot conclude the trial court erred in determining there was a threat to its jurisdiction.

In addition, the trial court also found the injunction was necessary to prevent the evasion of an important public policy. Specifically, the court found that Texas has a strong public policy favoring the enforcement of forum selection clauses, and the continuation of Rouse's Oklahoma suit would evade and undermine this policy. The court further found that if not required to litigate his claims against TCB in Texas, Rouse's promises in the Guaranty relating to venue and jurisdiction would be rendered meaningless.

■■■ As previously noted, the protection of an important public policy will support an anti-suit injunction. *See Golden Rule*, 925 S.W.2d at 651; *see also Monsanto Co. v. Davis*, 25 S.W.3d 773, 778 (Tex. App.-Waco 2000, pet. dism'd w.o.j.) (finding important public policy functions of class action); *Autonation Inc. v. Hatfield*, 186 S.W.3d 576, 580 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (recognizing important public policy in application of Texas law to enforceability of non-compete). Indeed, both Texas and federal courts recognize that public policy strongly favors the enforcement of forum selection clauses. *See Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 265–66 (Tex.App.-Austin 2010, pet. dism'd). Rouse offers no explanation as to why these public policy considerations are not compelling. Instead, he relies only on the assertion that the forum selection clause does not apply. But we have concluded otherwise, and agree with the trial court that Texas has a significant public policy interest in the enforcement of forum selection provisions to which the parties have agreed.

Finally, Rouse argues the trial court erred in finding the Oklahoma suit was vexatious and harassing and that TCB would suffer an irreparable injury if the

suit was not enjoined. This court considered a similar situation in *American Intern. Specialty Lines Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 343 (Tex.App.-Dallas 2001, pet. dism'd w.o.j.). The *Triton* case involved a challenge to the entry of an anti-suit injunction against a lawsuit filed in a jurisdiction contrary to what was required by contract. The contract at issue, an insurance policy, contained a "service of suit" clause that precluded the insurance company from asserting claims against the insured after the insured initiated an action under the policy. *Id.* at 340–41. After the insured initiated such an action in Texas, the insurance company filed suit in California. The trial court subsequently enjoined the California suit, and we affirmed the trial court's order. *Id.* at 343. In so doing, we reasoned that the trial court found irreparable harm based on three of the four *Golden Rule* factors. *Id.* We further noted that in light of all the circumstances, including the service of suit clause and the threat to the trial court's jurisdiction, the trial court did not err in finding the California suit vexatious and harassing. *Id.*

■ Rouse contends TCB could agree to abate the Texas case until the Oklahoma case is concluded, or alternatively, simply proceed on its breach of Guaranty claims in Texas. This argument is circular and unpersuasive. Rouse and TCB agreed that any disputes would be adjudicated in Texas. As the Texas Supreme Court has observed, it is burdensome to require a party seeking to enforce a forum selection clause to first participate in a trial and then appeal to vindicate his contract rights. *In re AIU Ins. Co.*, 148 S.W.3d 109, 117 (Tex.2004). In this regard, the court stated:

> Subjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights

granted in a forum selection clause is clear harassment. There is no benefit to either the individual case or the judicial system as a whole.

*Id.* Here, although a finding on any one of the *Golden Rule* factors will support the award of injunctive relief, the court made findings on three of the four factors. *See Golden Rule*, 925 S.W.2d at 651. The court concluded that, in light of the forum selection clause and the strong public policy considerations attendant to the enforcement of such clauses, the threat to its jurisdiction posed by the Oklahoma suit, and the fact that TCB had exhausted its pre-trial remedies in the Oklahoma system, the Oklahoma suit was vexatious and harassing and TCB would be without an adequate remedy if the Oklahoma suit was not enjoined. Under these circumstances, we cannot conclude the trial court exceeded the bounds of reasonable discretion in determining that a clear equity demanded the injunction. *See Triton Energy*, 52 S.W.3d at 342; *Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37, 51 (Tex. App.-Fort Worth 2001, pet. denied) (concluding all *Golden Rule* factors supported injunction).

Rouse's issue is overruled and the trial court's order is affirmed.