ACCEPTED
01-15-00300-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/3/2015 3:25:28 PM
CHRISTOPHER PRINE
CLERK

Case No. 01-15-00300-CV

_____

IN THE COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/3/2015 3:25:28 PM
CHRISTOPHER A. PRINE
Clerk

_____

**SUMMIT INDUSTRIAL CONSTRUCTION L.L.C.**

Appellant

v.

**UTICA EAST OHIO MIDSTREAM L.L.C.**

Appellee

_____

On appeal from the 190th Judicial District Court of Harris County, Texas
The Honorable Patricia J. Kerrigan Presiding

_____

# REPLY BRIEF OF APPELLANT

_____

**Oral Argument is Requested**

R. Carson Fisk
State Bar No. 24043659

FORD NASSEN & BALDWIN P.C.
111 Congress Ave., Suite 1010
Austin, Texas 78701
512.236.0009 (telephone)
512.236.0682 (facsimile)
rcfisk@fordnassen.com

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ iii

GUIDE TO CITATIONS AND ABBREVIATIONS ............................................v

REPLY TO UEOM FACTUAL MISSTATEMENTS ...........................................1

A.    The nature of Summit's damages remains an open question and Summit respectfully requests that the Court, to avoid any future confusion, not adopt UEOM's inaccurate description of Summit's claim .......................................1

B.    UEOM did, in fact, previously compensate Summit for delays......................3

C.    Summit's principal place of business is located in Georgia............................6

D.    UEOM delayed Summit during the Project.......................................................7

REPLY ARGUMENT ...........................................................................................8

I.    UEOM has broken its agreement with Ohio and has breached the Contract regarding forum ...............................................................................................8

II.    As the key issue in this appeal is forum, not choice of law, enjoining Summit does not protect Texas public policy—it contravenes it ...............................12

III.    The question of how a Texas court would rule on UEOM's legal defense is not resolved, therefore no ground for an injunction exists.............................16

IV.    UEOM's new arguments do not support a finding that Summit's actions were harassing and vexatious .......................................................................18

V.    There is no threat to Texas jurisdiction ........................................................20

VI.    A ruling in favor of UEOM will endorse the violation of law of a sister state, is contrary to the public policy of both states, and is inconsistent with the principle of comity.................................................................................24

VII.    Chapter 271 of the Texas Business and Commerce Code does not prohibit consideration of other states' laws...............................................................26

VIII.   Texas has no true interest in this case ...........................................................27

**CONCLUSION**.....................................................................................................28

**PRAYER** .............................................................................................................29

# INDEX OF AUTHORITIES

**Statutes**

**Texas**

Tex. Bus. & Com. Code § 271.005(b) ...................................................................26

Tex. Bus. & Com. Code § 272.001(b) ...............................................................9, 25

Tex. Civ. Prac. & Rem. Code § 15.11 ...................................................................9

Tex. Prop. Code § 53.154 ...................................................................................9

Tex. Prop. Code § 53.157 ...................................................................................9

Tex. Prop. Code § 53.175 ...................................................................................9

Tex. Prop. Code § 53.239 ...................................................................................9

**Ohio**

Ohio Revised Code 4113.62 ................................................ 8, 9, 12, 14, 22, 25, 26

**Cases**

**Texas**

*Abor v. Black,*
695 S.W.2d 564 (Tex. 1985)...............................................................................13

*Amer. International Specialty Lines Ins. Co. v. Triton Energy Ltd.*,
52 S.W.3d 337 (Tex. App.—Dallas 2001, pet. dism'd w.o.j.) ..........................18, 21

*Christensen v. Integrity Ins. Co.*,
719 S.W.2d 161 (Tex. 1986)...............................................................................22

*Continental Oil & Cotton Co. v. E. Van Winkle Gin & Machine Works*,
131 S.W. 415 (Tex. Civ. App. 1910, writ ref'd)....................................................10

*Gannon v. Payne*,
706 S.W.2d 304 (Tex. 1986)..............................................................................22

*Golden Rule Ins. Co. v. Harper*,
925 S.W.2d 649 (Tex. 1996)...............................................................16, 22, 24

*Great American Insurance Co. v. Laney*,
488 S.W.2d 481 (Tex. Civ. App.—Fort Worth 1972) ......................................10, 22

*Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*,
819 S.W.2d 607 (Tex. App.—Houston [1st Dist.] 1991, no writ) ..........................18

*Powell Elec. Sys. v. Hewlett Packard Co.*,
356 S.W.3d 113 (Tex. App.—Houston [1st Dist.] 2011, no pet.)............................2

*Rouse v. Tex. Capital Bank, N.A.*,
394 S.W.3d 1 (Tex. App.—Dallas 2011, no pet.) ...........................................16, 27

*Tenn. Gas Pipeline Co. v. Technip United States Corp.*,
2008 Tex. App. LEXIS 6419 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied)..............................................................................................................2

*Zachry Constr. Corp. v. Port of Houston Auth.*,
449 S.W.3d 98, 112 n. 66 (Tex. 2014)...........................................................10, 22

**Ohio**

*Cartmell v. Rudolph Wurlitzer Co.*,
18 Ohio Dec. 380 (Ohio C.P. 1907) .....................................................................9

*Dot Systems, Inc. v. Adams Robinson Enterprises*,
67 Ohio App. 3d 475 (Ohio App. 1990)...............................................................9

*Michels Corp. v. Rockies Express Pipeline, LLC*,
2015-Ohio-2218 (Ohio Ct. App., Monroe County June 5, 2015) ..........................14

# GUIDE TO CITATIONS AND ABBREVIATIONS

"Summit" means Summit Industrial Construction, LLC, the appellant.

"UEOM" means Utica East Ohio Midstream, LLC, the appellee.

"CR" means the Clerk's Record followed by the appropriate page number.

"RR" means the Reporter's Record followed by the appropriate page number.

"UEOM Brief" means Brief of Appellee Utica East Ohio Midstream L.L.C. followed by the appropriate page number.

The "Contract" means collectively, the Master Service Agreement executed March 15, 2014, and Contract Work Order No. PO 52066, executed on March 11, 2014. *See* CR 46-176.

"Project" means the construction of the Leesville cryogenic distillation plant in Carroll County, Ohio, which is the subject of this action.

In its brief, UEOM makes certain factual assertions and purports to "correct" certain allegedly "incorrect assertions" contained in Summit's brief. In several instances, such attempts misstate facts, which warrant clarification. Those issues are addressed briefly below:

**A.** **THE NATURE OF SUMMIT'S DAMAGES REMAINS AN OPEN QUESTION AND SUMMIT RESPECTFULLY REQUESTS THAT THE COURT, TO AVOID ANY FUTURE CONFUSION, NOT ADOPT UEOM'S INACCURATE DESCRIPTION OF SUMMIT'S CLAIM**

UEOM incorrectly states that "Summit claims that it is entitled to consequential damages…." UEOM Brief (p. 3). Summit's position is and has been that its damages are direct damages, which are outside the scope of Article 17.j., the waiver of consequential damages clause, of the Master Services Agreement portion of the Contract. *See e.g.* CR 182 ("[a]s a direct and sole result of [UEOM]'s changes and disruptions to the agreed Contract schedule, Summit's work was delayed and extended…."), 183 ("[t]his [request for equitable adjustment] is the direct result of [UEOM]'s failure to execute its core contractual obligations…."), 193 ("[t]hese delays directly resulted in the extension of Summit's field overhead costs…."), 194 ("[t]hese differing site conditions, coupled with the other delays and impacts to the above-ground and underground piping scopes of work, directly resulted in significant craft disruption and productivity loss"), 224 ("[a]s a result, Summit's direct costs of the work were increased. Summit is

1

entitled to an equitable adjustment of the Contract price to compensate it for these direct cost increases"), 264 ("Summit requested payment for the direct damages it incurred as a result"), 281 (same), 302 (same).

The parties' dispute regarding whether all or any portion of the damages sought by Summit in this case are or are not "consequential damages" within the meaning of Article 17.j. has never been actually presented to, considered by, or resolved by any court. The issue of whether damages are or are not consequential is essentially a mixed question of law and fact, not susceptible of summary adjudication. *See e.g. Tenn. Gas Pipeline Co. v. Technip United States Corp.*, 2008 Tex. App. LEXIS 6419, *9-10 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (parties instructed to place all evidence concerning damages before the jury, who would be instructed to determine whether a breach occurred and, if so, to determine the award of damages without regard to whether such damages were precluded under the contract, and the trial court would later determine which damages were barred as a matter of law); *Powell Elec. Sys. v. Hewlett Packard Co.*, 356 S.W.3d 113, 116 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (following a jury trial, the appellate court determined whether such damages were recoverable de novo).

UEOM's characterization of Summit's damages as consequential is both the fundamental underpinning of UEOM's argument that it will suffer harm if it is

required to litigate in Ohio and is also indicative of a fundamental flaw in the Trial Court's irreparable harm analysis, as discussed further in later portions of this brief. This issue—whether or not all or any portion of Summit's damages are consequential—has not been addressed, much less resolved, by any court nor, again, is it an issue that is susceptible of summary adjudication. Accordingly, UEOM's repeated characterization of Summit's damages as consequential in connection with this appeal, as if this were an established fact and without clarifying that this is merely UEOM's argument on the subject (let alone *not* the position of Summit), is highly inappropriate and wholly inaccurate.

Summit disputes UEOM's characterization of Summit's claim, and requests that the Court not adopt UEOM's general and inaccurate description of Summit's damages when issuing its decision. The nature of Summit's damages is an open question, which should be determined at the appropriate time as the underlying case progresses.

**B.     UEOM DID, IN FACT, PREVIOUSLY COMPENSATE SUMMIT FOR DELAYS**

UEOM denies that Change Order No. 5 to the Contract compensated Summit for delay damages. *See* UEOM Brief  (p. 8). In fact, however, UEOM paid Summit a substantial amount in delay damages pursuant to Change Order No. 5—damages that are virtually identical in nature to the damages UEOM now seeks to characterize as consequential and contractually barred. Pursuant to Change

Order No. 5, UEOM also agreed with Summit to a related extension of the Contract schedule.

UEOM states that it denied Summit's Request for Equitable Adjustment ("REA") "on the basis that Summit sought contractually barred consequential and indirect damages.…" UEOM Brief (p. 8). UEOM makes this statement without clarifying that, in fact, (1) UEOM issued letters and conducted meetings with Summit regarding its delay damage claims over a period of months without once raising this defense, (2) UEOM has never responded in writing to the REA (outside of formal legal pleadings), and (3) the first time UEOM ever raised any issue respecting Article 17.j. of the Master Services Agreement portion of the Contract in connection with this Project was in the petition filed in the underlying action seeking declaratory relief, which was prepared by its lawyers.

UEOM seeks to resolve its inconsistent course of performance in this case by (1) inaccurately stating that the sole purpose of Change Order No. 5 was merely to address additional piping added to Summit's scope of work and (2) inaccurately implying that UEOM raised its current consequential damages defense immediately following the assertion of Summit's delay claims, rather than accurately reporting that this defense was first raised by UEOM's lawyers months after the Project was completed. In fact, this defense was not raised until more than six months after UEOM agreed and actually paid Summit delay damages in

4

connection with Change Order No. 5 and only after several months of written and in-person pre-mediation negotiations concerning the additional delay claims referenced in the REA. *See* CR 6; 179-181. Notably, UEOM obviously understands that its factual contention is inaccurate, which is apparently why UEOM does not actually deny paying Summit for delays and instead states: "Nothing *in the appellate record*—save Summit's bare allegations—supports Summit's contention that Change Order No. 5's purpose was to compensate for Utica-caused delays." UEOM Brief  (p. 8) (emphasis added).  Change Order No. 5 is in the appellate record, however, as is the REA, and both confirm UEOM's course of performance.

Change Order No. 5, by its terms, involved a significant payment to Summit and postponed the mechanical completion date of the Project. *See* CR 180. The REA, in detail, further describes the role of Change Order No. 5 in compensating Summit for delays. *See e.g.* CR 185 (referencing "the acceleration/recovery plan reflected in Change Order No. 5" and "[t]he later-negotiated acceleration/recovery plan, Change Order No. 5…."); 189 (noting that "[t]he delay associated with this late-added scope was addressed in Contract Change Order No. 5…." and "Change Order 5 represented an acknowledgement of critical delay by [UEOM], and was an attempt by the parties to 're-baseline' the Project execution plan to account for the delays which had occurred in the form of a recovery/acceleration plan").

## C. SUMMIT'S PRINCIPAL PLACE OF BUSINESS IS LOCATED IN GEORGIA

UEOM attempts to characterize Summit's Texas office as its principal place of business or "main office." *See* UEOM Brief (p. 8-10). Summit's principal place of business is its office in Alpharetta, Georgia. *See* CR 280. The personnel managing Summit's Pasadena, Texas office take direction from the Alpharetta office, which is the location of Summit's President and Chief Executive Officer and other top executives. *See* CR 280. Summit's Texas office is a satellite office. *See* CR 280. UEOM's "proof" that the Texas office was Summit's principal place of business or "main office" consists of (1) the fact that Summit prominently displayed that it has a Texas office in marketing materials and (2) the fact that its Project Manager referenced the Pasadena, Texas office in his email signature block in late 2014, near the end of the Project. *See* UEOM Brief (p. 9-10). UEOM dismisses the sworn affidavit of Summit's President and Chief Executive Officer, favoring marketing materials and an email signature block, but fails to acknowledge that UEOM did not object to the affidavit in relation to the temporary injunction hearing.

With respect to the marketing materials, Summit is a growing industrial construction company that recently established its first permanent satellite office in a state that has significant industrial construction developments. *See* CR 263. Bringing attention to this expansion via its website is basic marketing. With respect

to Summit's Project Manager, UEOM fails to report that prior to August 2014, his office address was Alpharetta, Georgia. In fact, in June 2014 he signed the cover letter for Change Order No. 5, which solely identified Summit's Alpharetta, Georgia address. *See* CR 179. This individual was transferred to the Texas office after the start but before the completion of the Project. To the extent that any of this information is even relevant to the resolution of this dispute, UEOM's factual assertions are inaccurate.

## D.    UEOM DELAYED SUMMIT DURING THE PROJECT

UEOM claims that there is no evidence "[UEOM] did not timely perform certain work that Utica was allegedly responsible for completing before Summit's work could begin." UEOM Brief  (p. 11).  It is unclear to Summit why UEOM raises this issue, which is not relevant to this appeal, but it is notable that UEOM does not deny that it delayed Summit.  The reason is that UEOM, in fact, did not provide materials, equipment, and predecessor work per the agreed Contract schedule, and UEOM knows it.  Contrary to UEOM's assertions, this delay is evidenced by (1) promised delivery dates for owner furnished materials contained in Change Order No. 5 and the original Project schedule, as compared to (2) the actual delivery dates referenced in the REA, all of which are in the appellate record. *See e.g.* CR 180-181; 182-183.

## REPLY ARGUMENT

**I.     UEOM HAS BROKEN ITS AGREEMENT WITH OHIO AND HAS BREACHED THE CONTRACT REGARDING FORUM**

In its brief, UEOM alleges over and over again that Summit is attempting to "rewrite" or "subvert" the Contract. *See e.g.* UEOM Brief (p. 3, 5, 12, 23, 31, 32, 47). In fact, however, there is only one party to this dispute that has violated any agreement, and it is UEOM. Setting aside the Contract obligations UEOM failed to perform, there is a bigger picture agreement concerning this Project that UEOM does not want to discuss. UEOM agreed with the State of Ohio that it would subject itself to Ohio law and to an Ohio forum in return for the benefits Ohio law provides, both when it registered with the State of Ohio to do business in the state, and again when it sought and obtained a permit to construct the Project in Ohio.[1] It is notable that this Contract was entirely performed in Ohio, this Project and its related developments operate exclusively within the Ohio, and the Project is a natural gas facility that exclusively utilizes the natural resources of Ohio. *See* CR 280.

Ohio Revised Code §4113.62(D)(2) unambiguously requires litigation resulting from a contract for construction of a Project within the state of Ohio to be

---

[1] Notably, UEOM was not registered to do business in the State of Texas with the Texas Secretary of State's Office until *after* Summit informed the Trial Court of this fact in Summit's Motion to Dismiss. *Compare* CR 300 (noting in a motion filed by Summit on March 2, 2015 that "Utica Ohio is not registered with the Texas Secretary of State to do business in the State of Texas") *with* CR 517 (showing that UEOM's Application for Registration of a Foreign Limited Liability Company was not filed until March 5, 2015).

litigated in Ohio pursuant to Ohio law. *See* ORC Ann. § 4113.62(D)(2). Texas has codified a virtually identical public policy. *See* Tex. Bus. & Com. Code § 272.001(b). Similarly, the Ohio Mechanic's lien statute, just like the statutes in Texas and other states, requires that litigation to foreclose a mechanic's lien be brought where the property is located. *See* CR 298. Texas mechanic's lien law is in accord. *See e.g.* Tex. Prop. Code §§53.154, 53.157(2), 53.175, 53.239; Tex. Civ. Prac. & Rem. Code §15.11.

The underlying declaratory judgment action, UEOM's anti-suit injunction, and this appeal really involve a single issue—UEOM's ongoing refusal to follow the procedural laws applicable to this dispute, and a single question—whether the courts of Texas will endorse and facilitate UEOM's misconduct or not.

It is axiomatic that a foreign corporation that voluntarily elects to conduct business in a particular state agrees to do so in compliance with the applicable laws of the state or states within which it conducts business. This fundamental principle was expressly observed by Ohio courts as early as 1907:

> Foreign corporations may contract in this state within the scope of their powers, and *subject to the laws of this state*, in the same manner that domestic corporations and individuals resident of this state or of other states may.

*Cartmell v. Rudolph Wurlitzer Co.*, 18 Ohio Dec. 380, 386 (Ohio C.P. 1907) (emphasis added); *see also Dot Systems, Inc. v. Adams Robinson Enterprises*, 67

9

Ohio App. 3d 475, 481 (Ohio App. 1990) ("When a foreign corporation engages in business in a state, that corporation may be appropriately subjected to the laws of the state imposing conditions or restrictions upon its doing business within the limits of such state.")  Again, Texas law is in accord.  *Continental Oil & Cotton Co. v. E. Van Winkle Gin & Machine Works*, 131 S.W. 415, 416 (Tex. Civ. App. 1910, writ ref'd) ("It is settled that the state has the right to prescribe conditions to be complied with before a foreign corporation can do business in this State.")

As UEOM tacitly admits, it is a sophisticated party and conducts its business with the advice of counsel. *See* UEOM Brief  (p. 21). In fact, UEOM's in-house attorney, Laranne Breagy, is the person who signed the Contract for UEOM.  *See* CR 32.  Texas has long recognized the following principle regarding contracts:

> As a general rule, it may properly be said that laws in existence at the time and place of making of a contract, as well as *laws then existing at the place where the agreement is to be performed, constitute an integral part of the contract, just as if they had been expressly incorporated therein. Indeed, it is conclusively presumed that the parties to the contract knew the law and contracted with reference to it, and the agreement will therefore be construed with regard to such laws as were then in existence*.

*Great American Insurance Co. v. Laney*, 488 S.W.2d 481, 485-86 (Tex. Civ. App.—Fort Worth 1972), *rev'd on other grounds*, 498 S.W. 2d 674 (Tex. 1973) (quoting 13 Tex. Jur. 2d, Contracts, Sec. 165) (emphasis added); *see also Zachry Constr. Corp. v. Port of Houston Auth.*, 449 S.W.3d 98, 112 n. 66 (Tex. 2014)

10

(citing *City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011) and *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex. 1987)).

Literally all of UEOM's actions leading up to and in connection with this litigation have been for the purpose of avoiding the Ohio forum to which it voluntarily consented and chose to do business in. First, after receiving Summit's REA, UEOM denied responsibility, but proposed mediation in a successful attempt to delay the filing of a complaint by Summit. *See* CR 281. Then, despite an agreement being reached on the timing and other aspects of mediation, UEOM filed its Texas declaratory judgment action. *Compare* CR 281 (noting that details as to the mediation were reached on January 21, 2015 and mediation was scheduled for February 17, 2015) *with* CR 6 (showing UEOM's petition for declaratory relief being filed on January 21, 2015). UEOM seeks no damages in its Texas action, and did not serve the petition until just before the mediation. *See* CR 10-11, 12. Next, UEOM obtained an ex parte temporary restraining order and then immediately sought and obtained an injunction of Summit's properly filed Ohio action. Later, UEOM sought an extension of time to answer the Ohio action. *See* CR 16-24. The reason for UEOM's conduct is clear: UEOM wants to avoid, at all costs, the Ohio jurisdiction it consented to when it elected to do business in Ohio and when it contracted with Summit. It has done this while essentially pretending that the Contract includes a forum selection clause requiring litigation

11

in Texas while, in fact, no such clause exists in any form.

UEOM is now brazenly seeking validation of its misconduct from the Texas courts by arguing that it is Summit who is not following the Contract. The Court should not endorse UEOM's misconduct. Summit respectfully submits that UEOM's agreement with the State of Ohio, standing alone, is sufficient reason to dissolve the injunction. UEOM chose to do business in Ohio, and it committed breaches of contract in Ohio, made fraudulent representations in Ohio, failed to pay for work performed in Ohio, and a lien has been filed on its property in Ohio. UEOM's election—and its conduct—make pursuit of claims in Ohio entirely proper. Summit further submits that when UEOM's agreement with the State of Ohio as a permitted foreign corporation is coupled with its agreement with Summit to accept Ohio as the forum and applicable law for the resolution of this dispute by virtue of the incorporation of Ohio Revised Code §4113.62 into the Contract by operation of law, dissolution of the temporary injunction and dismissal of UEOM's underlying declaratory judgment action is the only appropriate remedy.

II.    **AS THE KEY ISSUE IN THIS APPEAL IS FORUM, NOT CHOICE OF LAW, ENJOINING SUMMIT DOES NOT PROTECT TEXAS PUBLIC POLICY—IT CONTRAVENES IT**

UEOM acknowledges that the Contract does not contain a forum-selection provision: "The contract does not have an explicit forum-selection clause." UEOM Brief (p. 4). In spite of the absence of a forum-selection clause within the four-corners of the Contract, and despite applicable law and public policy,

12

incorporated by operation of law into the Contract, that mandates that litigation arising out of the Contract be brought in Ohio, UEOM convinced the Trial Court to effectively insert a Texas forum requirement and seeks to have this Court affirm that ruling. UEOM uses its "first-filed" status as a declaratory judgment plaintiff to bolster its request, despite the fact that UEOM is not, in reality, the actual plaintiff in the case.[2]

UEOM argues that Summit's Ohio action is a threat to Texas' public policy of protecting freedom of contract and enforcing contracts as written. To that end, the order granting the anti-suit injunction, which was drafted by UEOM's attorney, states:

> If Defendant is permitted to prosecute its Ohio lawsuit and seek construction of the contract under Ohio law, despite the express terms of the contract requiring construction under Texas law, their actions are likely to result in immediate and irreparable harm to Plaintiff by denying Plaintiff the benefit of key provisions bargained for in their contract, and used in many other similar contracts to which Plaintiff is a party. The probable injury that would be suffered through Plaintiff's loss of the benefit of these express rights under the contract is imminent and would be an irreparable injury for which Plaintiff would have no adequate legal remedy. Further, such actions would evade and be a violation of Texas's public policy interest in enforcing a contract as written to preserve the freedom of contract. CR 668.

---

[2] In *Abor v. Black*, 695 S.W.2d 564, 566 (Tex. 1985), the Texas Supreme Court supported the dismissal of a declaratory judgment action where the suit sought a declaration of non-liability and where the declaratory judgment suit, "deprived the real plaintiff of the traditional right to choose the time and place of suit."

The implication of this holding is that if Summit had filed first in Ohio but taken the position that Texas law applied, then Summit's actions would *not* have been an evasion. Ultimately the outcome would have been the same; the Ohio court would have followed Ohio Revised Code §4113.62(D) and applied Ohio law as required by the statute. *See e.g. Michels Corp. v. Rockies Express Pipeline, LLC*, 2015-Ohio-2218, *P25 (Ohio Ct. App., Monroe County June 5, 2015) (confirming that Ohio Revised Code §4113.62 trumps a contractual choice of law clause). Moreover, the potential application of Ohio law to this dispute is a function of law—law to which UEOM voluntarily submitted—and not any improper action on the part of Summit. Therefore, the real issues in this appeal are forum, comity, and UEOM's agreement to be bound by the laws of Ohio with respect to its actions as a foreign corporation operating within the borders of Ohio.

Even if the Ohio statute is not considered and, further, even if UEOM's argument that this appeal should be decided solely on the basis of the boilerplate choice of law provision in the Contract is followed, Summit *still* should not be enjoined from pursuing legal remedies in Ohio because there was no agreement to litigate in Texas. UEOM repeatedly claims Summit is attempting to rewrite the Contract or use the Ohio court to rewrite the Contract. *See e.g.* UEOM Brief (p. 12, 13, 23, 26, 31, 35). UEOM refers to itself as a "sophisticated part[y] receiving the advice of counsel"—counsel that executed the Contract, counsel that was

presumably involved in registering UEOM with the Ohio Secretary of State, and counsel that was presumably aware of applicable Ohio law. *See* UEOM Brief (p. 24); CR 173. But while UEOM positions itself in this case as a champion of the sanctity of freedom of contract, UEOM generally ignores the fact that it, as a sophisticated party that operates under the advice of counsel, neither bargained for nor included a forum selection clause in the Contract.

As UEOM admitted in the March 16, 2015 hearing, the Master Service Agreement is UEOM's standard form; UEOM drafted it. *See* RR 50:1-23. Despite the absence of a forum-selection clause in its own contract form, UEOM has sought, and been granted, an anti-suit injunction on the grounds that Summit's Ohio lawsuit, brought in accordance with applicable law (statutorily mandated in this case) which was, in accordance with Texas law, incorporated by reference into the Contract, is an evasion of Texas public policy supporting freedom of contract.

The ironic upshot of UEOM's position is that *UEOM is requesting that this Court rewrite the Contract to include a forum-selection clause*, or to alternatively hold that, despite Texas's recognition of the difference between choice of law and forum, a choice of law clause acts to limit otherwise available or required forums. UEOM is requesting this remedy without providing any legal precedent for such a decision and in the face of the public policy of both Ohio and Texas, both of which unambiguously declare that construction disputes should be litigated in the state in

which the project is located and in accordance with the law of the state where the project is located, despite any contract provisions to the contrary. Moreover, UEOM's position gives absolutely no credence to the concept of comity, despite the Texas Supreme Court's statement that "if the principle of comity is to have any application, a single parallel proceeding … cannot justify issuing an anti-suit injunction." *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651-652 (Tex. 1996) (citing *Gannon v. Payne*, 706 S.W.2d 304, 307 (Tex. 1986)). Moreover, as stated in the *Rouse* decision, "In accordance with the principle of comity, Texas will recognize the laws of other states and, in return, will expect those other states to afford the same treatment to Texas." *Rouse v. Tex. Capital Bank, N.A.*, 394 S.W.3d 1, 7 (Tex. App.—Dallas 2011, no pet.) (citing *K.D.F. v. Rex*, 878 S.W.2d 589, 593-94 (Tex. 1994)). UEOM's position is contrary to the policies it purports to champion, the policies established by the Texas legislature, and the policies established by the Texas Supreme Court and appellate courts.

III. **THE QUESTION OF HOW A TEXAS COURT WOULD RULE ON UEOM'S LEGAL DEFENSE IS NOT RESOLVED, THEREFORE NO GROUND FOR AN INJUNCTION EXISTS**

UEOM's claim that it will be prejudiced is a legal conclusion based on issues that have not been factually developed, and determinations that the Texas court has not yet made. Specifically, UEOM claims that Summit's damages are consequential under Texas law and are, therefore, not recoverable pursuant to

Article 17.j. of the Master Services Agreement portion of the Contract. *See* CR 9, 10. UEOM's position is disputed, and this issue has not been presented, briefed, ruled upon or otherwise established. *See* CR 259. That alone implies an abuse of discretion by the Trial Court, taking all of UEOM's other disputed positions at face value, because absent a finding that UEOM would receive a different result under Ohio law, there is no evidence that an irreparable miscarriage of justice or irreparable harm will occur. As UEOM noted in its appellate brief, there can be no harm in applying one state's law if there is no conflict with another state's law. *See* UEOM Brief (p. 34). Without a legal determination of whether or not the damages sought in the REA are excluded by the Contract's general consequential damages waiver under Texas law,[3] there was no evidence before the Trial Court that UEOM would suffer an irreparable harm.

UEOM bears the burden to establish irreparable harm in support of its request for an injunction but it demonstrably did not carry that burden, even if this Court accepts UEOM's other erroneous arguments. A conjectural injury is not enough. As this Court has stated:

> The law is well settled that a trial court abuses its discretion in granting a temporary injunction unless it is clearly established by the facts that one seeking such relief is threatened with an actual irreparable injury if the injunction is not granted. Moreover, an

---

[3] UEOM's position appears to be that Summit's damages are recoverable under Ohio law, whether or not Summit's damages are ultimately characterized as consequential or direct.

17

injunction will not lie to prevent injury that is purely conjectural.

*Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 611 (Tex. App.—Houston [1st Dist.] 1991, no writ). UEOM failed to meet its burden and, accordingly, the Trial Court abused its discretion in issuing the temporary injunction.

## IV.    UEOM'S NEW ARGUMENTS DO NOT SUPPORT A FINDING THAT SUMMIT'S ACTIONS WERE HARASSING AND VEXATIOUS

In attempting to support the finding of harassing and vexatious action by Summit, UEOM relies upon a single aspect of the *Triton* decision implying that the Texas defendant's attempt in that case to proceed to summary judgment very quickly after it filed suit in California and its refusal to grant the Texas plaintiff additional time to "develop the case" was the basis for the Court's finding of harassing and vexatious behavior. *See* UEOM Brief  (p. 36). However, in the very next sentence of its opinion, the Court in *Triton* focused on the fact that the Texas defendant had violated its contract by bringing the second California suit in contravention of the parties' contractual forum selection clause: "The trial court found that rather than submitting to the jurisdiction of the Texas court and abiding by its decision, *as the insurance policy required*, AISLIC filed suit in California and proceeded to race to judgment there." *Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 342 (Tex. App.—Dallas 2001, pet. dism'd

w.o.j.). There is no express forum selection clause in this Contract, a fact which distinguishes this case from the facts presented in the *Triton* and *Rouse* decisions relied upon so heavily by UEOM.

Moreover, Summit has not done anything to accelerate the Ohio action, despite the fact that Ohio is the proper forum, and has instead merely notified the Ohio court of UEOM's injunction so as to avoid an involuntary dismissal for want of prosecution. Instead of pursuing relief in Ohio, Summit has pursued this appeal. Summit's notice of temporary restraining order filed with the Ohio court was neither harassing nor vexatious, by any reasonable standard. UEOM obtained its ex parte temporary restraining order in the underlying case on February 19, 2015. *See* CR 15. Weeks later, on March 13, 2015, neither UEOM nor the Trial Court had informed the Ohio court of the fact that Summit had been enjoined from pursuing the Ohio action. Summit's local counsel in Ohio, having duties to that court independent of its duties to Summit, filed the notice of temporary restraining order informing the Ohio court of what had occurred while asking absolutely nothing of the Ohio court. *See* RR (Ex. 14). UEOM takes the position that simply informing the Ohio court as to the events occurring in the Texas action (and even the existence of the Texas action), when UEOM was unwilling to do so, amounts to harassing and vexatious conduct. UEOM's concern with and objection to having the Ohio court even informed of the existence of the injunctive relief sought and

obtained by UEOM merely illustrates the extent to which UEOM is prepared to go to avoid the Ohio forum it is legally committed to.

Indeed, if Summit's notice to the Ohio court informing it that Summit was enjoined from proceeding was deemed to be harassing and vexatious and a violation of the temporary restraining order, particularly under circumstances in which UEOM did not notify the Ohio court itself, the result would be an incredibly unjust situation wherein UEOM could file any request or motion in Ohio that it wanted, Summit would be precluded from responding by the injunction obtained by UEOM, and Summit's counsel would be exposed to potential contempt claims in Texas for responding and malpractice claims in Ohio for not responding. This scenario could also result in Summit's lien rights and other causes of action being dismissed with prejudice for want of prosecution. This result is neither necessary nor desired, even in the very narrow circumstances where an anti-suit injunction is warranted; circumstances that are not present in this case. Summit's conduct leading up to and in addressing the temporary injunction has been anything but harassing and vexatious.

## V.   THERE IS NO THREAT TO TEXAS JURISDICTION

UEOM urges the Court to follow the conclusions of *Rouse* and *Triton* without recognizing the major differences between those cases and this case, most importantly (1) the fact that both cases involved second-filed lawsuits where the

forum for disputes was governed by contract, and (2) the fact that neither of those cases involved a party filing suit in Texas in violation of another state's law to which it knowingly and voluntarily consented (to its benefit), as UEOM did here.

In the section of the *Triton* opinion addressing threat to jurisdiction, the *Triton* court specifically focused on the violation of the contract's forum selection clause, stating:

> The trial court found that AISLIC had undercut its contractual promise by pursuing the California Lawsuit, and concluded that having made that agreement and them having gotten here first, whether they should or shouldn't have, that's it. And you can't undercut that by running off to another forum. I think that this -- the other case therefore becomes a threat to my jurisdiction. It wouldn't otherwise be, but it does become one.

*Triton*, 52 S.W.3d at 342. The court specifically tied the contractual promise respecting forum to the threat to jurisdiction. *See Triton*, 52 S.W.3d at 342.

There was no contractual promise by Summit to submit to a forum of UEOM's choosing in this case. And despite UEOM's repeated attempts to portray Summit's Ohio action as "seeking" to have the case adjudicated using Ohio law, the fact is that the potential application of Ohio law to this dispute is a function of law—law to which UEOM voluntarily submitted—and not any action on the part of Summit. Summit has not undercut any agreement. By contrast, UEOM has undercut its agreement with the State of Ohio to subject itself to Ohio law, and also undercut its agreement with Summit when it filed the underlying Texas action

21

before mediation that it proposed and later when it sought to restrain Summit from proceeding in the required Ohio forum.

In fact, as previously established, Texas courts adhere to the principle that the law of the place where a contract is to be performed is incorporated into and forms a part of a contract as if it was expressly set forth in the agreement. *See Laney*, 488 S.W.2d at 485-86; *Zachry*, 449 S.W.3d at 112 n. 66. Applying this well-established Texas law, the decisions in *Rouse* and *Triton* actually mandate a decision in favor of *Summit*, as it is UEOM that is violating the Contract's implicit forum-selection provision as established by Ohio Revised Code §4113.62. UEOM's entire appellate argument respecting these two decisions, when considered in conjunction with the fact that Ohio Revised Code §4113.62 is incorporated into the Contract by operation of law, mandates a ruling in favor of Summit and a dismissal of the Texas action. The only court whose jurisdiction has been threatened is the Ohio court.

Moreover, the idea that the Ohio court could, without any indication that it intends to, attempt to issue pre-emptive rulings on issues before the Texas court could adjudicate them has been rejected by the Texas Supreme Court as a threat to jurisdiction in *Gannon, Christensen,* and *Golden Rule*, which all involved second-filed parallel actions. *See Gannon v. Payne*, 706 S.W.2d 304, 307 (Tex. 1986); *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163-164 (Tex. 1986); *Golden*

22

*Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996). By contrast, in *Rouse*, the aggrieved defendant in the second-filed Oklahoma suit filed a motion to dismiss and, later, a motion for judgment on the pleadings or, in the alternative, a stay of claims, both of which were based on the contract forum-selection clause and both of which were denied by the Oklahoma court. Based on these facts, the *Rouse* court stated: "[D]espite TCB's requests, the Oklahoma trial court and the Oklahoma Supreme Court declined to stay or abate the claims against TCB in the Oklahoma suit. *Because of this refusal to act*, the trial court could reasonably conclude that Oklahoma was not a cooperative jurisdiction." *Rouse*, 394 S.W.3d at 8 (emphasis added).

Notably, all of this analysis turned on the presence of a forum-selection clause requiring that suit be brought in Texas. In this case, the only forum-selection clause is imposed by law and mandates that Ohio is the proper forum. There is no forum-selection clause pursuant to which the parties agreed to a Texas forum.

Moreover, the Ohio court has taken no action in this case similar to that taken by the Oklahoma court in *Rouse*. Since UEOM filed its answer, UEOM has made no attempts to have the case dismissed or stayed. The Ohio case was filed in early February 2015, and UEOM filed its answer on or around March 20, 2015. Since then the only communications from the Ohio court to the parties has been in an attempt to set up an initial status conference, which would occur at the earliest

sometime in August 2015. UEOM's own lack of action in Ohio and the speed of the court in the Ohio action are not consistent with UEOM's argument that there is a threat to jurisdiction.

The Supreme Court of Texas has made short work of all three of the anti-suit injunction cases it has heard in the past thirty years. In the most recent case, *Golden Rule*, the plaintiff in the first-filed Texas action involved a Texas widower suing the defendant insurance company to recover the costs of the deceased spouse's medical care in Texas. *See Golden Rule*, 925 S.W.2d at 650. The insurance company, after first attempting to change venue within the state, filed a declaratory judgment action in Illinois, requiring the plaintiff-widower to engage in duplicative litigation. *See Golden Rule*, 925 S.W.2d at 650. Even under the much more compelling facts of *Golden Rule* (no statute requiring litigation in a particular state, no voluntary submission to Illinois law by the plaintiff-widower, no contract performance in Illinois)*,* the Texas Supreme Court overturned the anti-suit injunction against the insurance company in a brief, three-page decision based upon comity considerations; considerations UEOM simply ignores.

**VI.   A RULING IN FAVOR OF UEOM WILL ENDORSE THE VIOLATION OF LAW OF A SISTER STATE, IS CONTRARY TO THE PUBLIC POLICY OF BOTH STATES, AND IS INCONSISTENT WITH THE PRINCIPLE OF COMITY**

Both Ohio and Texas recognize their respective state's interest in having construction disputes litigated locally, and have determined that this public policy

is important enough to statutorily codify. *See* ORC Ann. § 4113.62(D)(2); Tex. Bus. & Com. Code § 272.001(b). Ohio Revised Code §4113.62 mandates UEOM bring its action in Ohio. UEOM exists for the sole purpose of doing business in Ohio, as its name (Utica East Ohio Midstream) suggests. It owns property in Ohio, contracted to build facilities in Ohio, and its sole business purpose is to avail itself of and profit from Ohio natural resources. As an attorney-represented company, UEOM knew or should have known about Ohio Revised Code §4113.62 at the time its attorney executed the Contract and at the time it registered to do business as a foreign corporation in Ohio. When disputes arose and Summit submitted its REA, UEOM promptly suggested mediation. Then prior to mediation, and despite claiming no actual damages, UEOM surreptitiously filed a declaratory judgment action in Texas, and later moved to enjoin Summit's properly filed Ohio action. This whole case is a calculated attempt by the non-aggrieved party to avoid jurisdiction it is legally required to submit to and which it voluntarily agreed to submit to.

There is no precedent supporting UEOM's desired outcome: specifically, an anti-suit injunction imposed by a Texas court to facilitate attempts of a foreign corporation to avoid the jurisdiction of the courts of another state to which the foreign corporation voluntarily submitted. It would be poor policy, wholly inconsistent with the concept of comity, for Texas courts to facilitate and endorse

25

such actions.  The result would be to encourage parties to race to the courthouse and to encourage other state courts and litigants to thwart the Texas public policy set forth in Chapter 272 of the Texas Business and Commerce Code. It would also open the door to other states treating Texas in a similar manner.

UEOM attempts to support its stance with inconsistent positions.  In its brief, UEOM characterizes forum selection as merely procedural: all it does is "set a ZIP code." UEOM Brief  (p. 30).  Yet the entire basis of the irreparable harm UEOM claims it would suffer in the absence of the anti-suit injunction would result from litigating in the Ohio forum.  UEOM also presumes, apparently, that an Ohio court is simply incapable of correctly determining the controlling law, and then apply it correctly. The fact is, however, that any claim that the loss of the benefit of the choice of law clause would harm UEOM if litigation in Ohio were to continue is a function of law that UEOM voluntarily submitted itself to, not action by Summit. *See* ORC Ann. § 4113.62(D)(1).

## VII.  CHAPTER 271 OF THE TEXAS BUSINESS AND COMMERCE CODE DOES NOT PROHIBIT CONSIDERATION OF OTHER STATES' LAWS

UEOM suggests that Chapter 271 precludes this Court from considering any public policy-based outcome in favor of Summit.  *See* UEOM Brief  (p. 23). However, Ohio Revised Code §4113.62 is a law, not merely a public policy.  Even UEOM, while championing the cause of freedom of contract, acknowledges that other statutes, particularly Chapter 272 of the Texas Business and Commerce

26

Code, override the right of freedom of contract protected in Chapter 271. *See* UEOM Brief  (p. 23) (recognizing that "Chapter 272 is an exception to Chapter 271…."). Chapter 271 does not prohibit the consideration of other Texas statutes regarding choice-of-law, nor does it prohibit consideration of sister states' statutes regarding choice-of-law.  Recognizing the statutes of other states is consistent with the principle of comity as stated in the *Rouse* decision: "In accordance with the principle of comity, Texas will recognize the laws of other states and, in return, will expect those other states to afford the same treatment to Texas." *Rouse*, 394 S.W.3d at 7.

## VIII.  TEXAS HAS NO TRUE INTEREST IN THIS CASE

Finally, Texas has no true interest in this case, save its interest in preserving and protecting the public policies established by Chapter 272 of the Texas Business and Commerce Code.  The parties did not contract for Texas—or any state—as the forum for dispute resolution. UEOM has not established that the application of Ohio law will result in a different result than the application of Texas law in this case. More fundamentally, UEOM knowingly agreed to the application of Ohio law and to an Ohio forum when it contracted for construction of a project located in Ohio. Summit filed its affidavit for mechanic's lien in Ohio, as it was required to do, on property located in Ohio. *See* CR 233-234. UEOM, as alleged by Summit, made fraudulent representations in connection with the

execution of Change Order No. 5, such representations being made in Ohio, Colorado, and Georgia. *See* CR 43, 282. While Summit has a satellite office in Texas, and UEOM subcontracted management of construction to another company that does work in Texas, the entirety of the contracted for work occurred in Ohio and the facility will operate in Ohio utilizing Ohio employees, will generate Ohio (not Texas) taxes, and will develop, consume and sell Ohio natural resources. Trying the case in Texas imposes a burden on Texas taxpayers with no corresponding benefit.

## CONCLUSION

The Trial Court has determined that, for a project and transaction that had no real connection to Texas with no mandated forum contained in the applicable contract, Texas is the sole appropriate forum, even when the wrongful acts complained of and resulting damages occurred outside of Texas and the wronged party was required by law to file suit elsewhere. Summit did what it was required to do—file suit in Ohio, where the construction project was located, which was done pursuant to a codified public policy, also shared by Texas, that provides that disputes involving construction projects should be resolved within the borders of the state where the project is located. Summit's interest in litigating its contract, tort, statutory, and equitable claims in the state where UEOM's acts and omissions occurred and the Project is located is consistent with applicable law, public policy,

28

and common sense. There was no threat to the Trial Court's jurisdiction, no evasion of important public policy by Summit, no multiplicity of suits, and no vexatious or harassing litigation conduct. The totality of circumstances negates the possibility that a clear equity justified the Trial Court's issuance of the temporary injunction. In short, the Trial Court abused its discretion in issuing the temporary injunction. As such, the ruling should be reversed.

## PRAYER

Summit requests that this Court reverse the order of the Trial Court and render an order denying *Plaintiff Utica East Ohio Midstream, L.L.C.'s Application for Anti-Suit Injunctive Relief*, and Summit prays for such other and further relief at law and equity to which it may show itself justly entitled.

Respectfully submitted,

**FORD NASSEN & BALDWIN, P.C.**
111 Congress Ave., Suite 1010
Austin, Texas 78701
512.236.0009 (telephone)
512.236.0682 (facsimile)
rcfisk@fordnassen.com

By: /s/ R. Carson Fisk
R. Carson Fisk
State Bar No. 24043659

**Attorney for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served pursuant to the Texas Rules of Appellate Procedure via the electronic filing manager, if the email address of the party or attorney to be served is on file with the electronic filing manager, or via first class mail, if the email address of the party or attorney to be served is not on file with the electronic filing manager to the following person(s) on August 3, 2015:

**Counsel for Utica East Ohio Midstream, L.L.C.**
Nicholas D. Stepp, Scott D. Marrs, Andrew B. McGill, and Scott R. Davis
Beirne Maynard and Parsons L.L.P.
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

By: /s/ R. Carson Fisk
R. Carson Fisk

## CERTIFICATE OF COMPLIANCE

In compliance with Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that there are 7,483 words in the foregoing document.

By: /s/ R. Carson Fisk
R. Carson Fisk